IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SETH RODGERS, #306637,                )
                                      )
            Plaintiff,                )
                                      )
      v.                              ) CIVIL ACTION NO. 2:19-CV-501-MHT-SMD
                                      )
WEXFORD HEALTH SOURCES, INC.,         )
 et al.,                              )
                                      )
            Defendants.               )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed on July 15, 2019, by Seth Rodgers, a state inmate, in which he alleges that the Defendants acted with deliberate indifference when they provided inadequate medical treatment for his gastrointestinal issues and when they housed him in a dorm with no ventilation system[2].  Specifically, Rodgers alleges that beginning in March 2018, when he was placed at Kilby, and continuing until the time he filed his complaint, the Defendants have been deliberately indifferent to his medical and housing needs. (Doc. 1-1 at pp. 1-2).  He names no Correctional Defendants but names Wexford Health Services and Dr. Wilcotte Rahming[3], as Medical Defendants.  (Doc. 1 at p. 1).  He does not specify whether

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

[2]  The undisputed evidence demonstrates that neither Dr. Rahming nor Wexford Health Sources, Inc. had any involvement in Plaintiff's dorm placement.  Nor did these defendants have any authority concerning the temperature, ventilation or dust levels in Kilby housing.  (Doc. 19-8 at 4.)  Accordingly, the Court concludes that this housing claim is due to be summarily dismissed without further discussion.

[3]  The Court notes that the docket spells Dr. Rahming's name incorrectly as "Dr. Wilcott Rhamning".  Throughout this Recommendation the Court will use the spelling as stated in Dr. Wilcotte Rahming's affidavit.  (Docs. 19-8 and 23-1).

he sues the Defendants in their individual or official capacities and seeks "parole in black and white" and money damages.  (Doc. 1 at p. 4).  By Order dated July 17, 2019, this Court advised the Plaintiff that this action would proceed solely against the Medical Defendants on his medical claims, and if he wished to proceed on his claims for deliberate indifference based on his housing, he could file a separate Section 1983 action.  (Doc. 5).

The Defendants filed a special report, and a supplement thereto, and relevant evidentiary materials in support of their reports, including affidavits, addressing the claims raised in the complaint, as amended.  In these documents, the Medical Defendants maintain they did not act with deliberate indifference to Rodgers medical or housing needs.  (Docs. 19, 23).

After reviewing the special reports filed by the Defendants, the court issued an order on December 11, 2019, directing Plaintiff to file a response to each of the arguments set forth by the Defendants in their reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  (Doc. 24).  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  (Doc. 24 at p. 3).  Rodgers filed a sworn response to this order on February 3, 2020.  (Doc. 25).  Pursuant to the directives of the Order entered December 11, 2019, (Doc. 24), the Court now treats the Defendants' special reports (Docs. 19, 23) as motions for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II.  STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## III.  FACTS

The Plaintiff brings a claim for deliberate indifference due to the Defendants failure to properly treat his Crohn's disease and other conditions.  In their special report the Defendants deny they have acted with deliberate indifference to Rodgers' treatment related to his gastrointestinal

issues. Rather, the Defendants assert that medical personnel at Kilby have provided treatment to Rodgers in accordance with their professional judgment. They further assert that they referred Rodgers to outside gastroenterology specialists for treatment and, ultimately surgery. Based on the surgeon's reports, an additional referral was neither necessary nor warranted. In addressing these claims, Defendant Dr. Wilcotte Rahming, a medical doctor employed by Defendant Wexford Health Services, Inc., with expertise in Gastroenterology and Internal Medicine, testified as follows:

> I am a medical doctor licensed to practice in the State of Alabama. My medical expertise is in Gastroenterology and Internal Medicine. I specialize in inflammatory bowel disease. I am employed by Wexford Health Sources, Inc. I am Medical Director at Kilby Correctional Facility, a facility of the Alabama Department of Corrections. I was so employed during the Plaintiffs most recent incarceration at Kilby Correctional Facility. Wexford Health Sources Inc. holds the contract with the Alabama Department of Corrections to provide health care to inmates incarcerated within Alabama Department of Corrections facilities.

> I am familiar with the Plaintiff and have reviewed the Plaintiff's medical records that I have access to. I recall providing medical care to the Plaintiff and interacting with the Plaintiff. The Plaintiff's relevant medical records were attached to my previous declaration.

> I deny the allegations made against me by Plaintiff as being untrue and completely without basis in law or fact. I deny that I acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Specifically, I deny that Plaintiff has been deprived of adequate medical care by me during his incarceration at Kilby Correctional Facility.

> Inmates needing medical care are examined at the medical clinic located inside Kilby Correctional Facility. The medical professionals run the medical clinic and all instructions of the medical personnel are followed by jail staff.

> Plaintiff was examined by me multiple times during his most recent incarceration at Kilby Correctional Facility, and, to my knowledge, all instructions of medical staff have been followed by corrections staff. Plaintiff has continually had access to medical professionals during his incarceration.

> The first time I examined the Plaintiff he had previously been diagnosed with Crohn's disease, a type of inflammatory bowel disease, and had an ostomy bag in place. Plaintiff was under-weight at my first examination because his disease was not under

control. Throughout my treatment of the Plaintiff he wanted immediate surgery to heal his Crohn's disease. Plaintiff wanted to have a procedure that reversed the ostomy bag placement. I continually explained to Plaintiff that his disease could not be healed with surgery but that it must be treated with medications.

When I first began treating the Plaintiff, he followed my instructions for controlling his disease. However, during a lengthy portion of Plaintiffs incarceration at Kilby Correctional Facility he was non-complaint with my instructions regarding treating his disease. Plaintiff took his prescribed medications on an inconsistent basis. Plaintiff would refuse to take his prescribed medication. Multiple medical records of the Plaintiff document his noncompliance. Thus, the severity of the symptoms of his disease greatly increased and Plaintiff lost weight.

I explained to Plaintiff multiple times that his disease must be brought under control and managed with medications in order for him to have the surgery he desired. I also continually explained to Plaintiff that Crohn's disease is a chronic life-long disease that surgery cannot cure. Several times Plaintiff became irate during my discussions with him. Inmates at Kilby Correctional Facility have autonomy in taking their medications. Staff does not force inmates to take medications. It was Plaintiff's responsibility to take his medications when they were distributed by medical staff.  When Plaintiff's non-compliance was increased he would be moved to the Health Care Unit in order to get better compliance with taking medications.

From my review of Plaintiffs records, Plaintiff's ostomy bag was placed at UAB hospital on September 17, 2017. Plaintiff arrived at Kilby Correctional Facility from the Geneva County, Alabama Jail on March 16, 2018. Plaintiffs Chron's disease was not well controlled at his arrival.

During Plaintiffs incarceration, he was prescribed the following relevant medications: acetaminophen for pain, docusate to relieve constipation, the immunosuppresants Azathioprine and Methotrexate, Mesalamine to treat inflammation of ulcerative colitis, Prednisone to reduce inflammation, the gut antispasmodic Dicyclomine, Escitalopram for depression and anxiety, Boost nutritional supplement and various antibiotics. Also, Plaintiff was provided with colostomy supplies. Two of the medications I prescribed Plaintiff to treat his Chron's disease by reducing inflammation caused a negative skin reaction in the form of a rash. Thus, Humira and Remicade had to be discontinued and other medications used. Plaintiff was on an enhanced calorie and protein diet at Kilby. However, Plaintiff often stated that he refused to eat the food served to him. To my knowledge, each medication prescribed to Plaintiff was attempted to be distributed to Plaintiff by medical staff. The specific dates Plaintiff refused medications are not known to me. Plaintiff refused to take his medications a vast number of times throughout his incarceration and discussed this issue with me multiple times. Only Plaintiff would know each of these dates of non-compliance. This continual non-compliance with instructions for his medications kept him from stabilizing his Chron's disease for many months.

In 2018, I was scheduled to examine Plaintiff several times a month as part of his placement in the Chronic Disease Clinic. However, Plaintiff refused to be seen on August 27, 2018, September 26, 2018, December 19, 2018, and January 16, 2019.

On December 10, 2018, I examined Plaintiff as part of the Chronic Disease Clinic. Plaintiff admitted non-compliance with taking his medications and promised to take the medications.

On November 28, 2018, I sent Plaintiff to UAB to be reevaluated by a surgeon. This physician noted Plaintiff's non-compliance with prescribed medications and recommended continued medical treatment for Crohn's disease and did not recommend surgery as Plaintiff was not medically stable.

On February 20, 2019, Plaintiff was hospitalized at Jackson Hospital in Montgomery because he had become malnourished as a result of refusing to take his medications. Upon Plaintiffs release from Jackson Hospital on March 4, 2019, he was assigned a bed in the Healthcare Unit at Kilby.

In my March and April 2019 examinations of Plaintiff, I observed some slow improvement due his taking his medications on a more regular schedule. However, at my May 21, 2019, examination Plaintiff was again refusing to take his medications and insisting on surgery.

On June 24, 2019, Plaintiff was briefly transferred to Easterling Correctional Facility. In July 2019, Plaintiff was admitted to the Jackson Hospital ER from Dale Medical Center due to pain in his abdomen. Plaintiff was then transferred back to Kilby.

Plaintiff was discharged from the Healthcare Unit on July 26, 2019, because he was medically stable and able to return to a dorm. Plaintiff had gained a significant amount of weight in 2019 due to compliance with medications.

Plaintiff continually complained about wanting surgery. Because Plaintiff was medically stable enough for surgery, I called UAB to find a specialist to evaluate Plaintiff. In June 2019, I found a doctor at UAB that does inflammatory bowel surgery that would examine Plaintiff.

Plaintiff was transported to UAB on July 30, 2019, to be evaluated by George Kennedy, M.D. On August 26, 2019, Plaintiff had surgery to reverse the ostomy that had been performed on Plaintiff before he became my patient.

Plaintiff was transferred to an Alabama Department of Corrections facility closer to UAB before this surgery. I have not observed any staff members of Wexford Health Sources, Inc. or the Alabama Department of Corrections take any deliberate action to block, deny, or delay access of the Plaintiff to health care. All instructions of medical personnel are followed by jail staff including all instructions regarding appointments with outside medical providers, dietary needs, housing and treatment for any inmate. Any doubt

as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

Specifically, I have taken no action to restrict, block or delay Plaintiff's access to any medical provider or any medical treatment. I have never refused to treat Plaintiff for any medical issue. Specifically, I have never refused to treat Plaintiff for any issue regarding Crohn's disease. Plaintiff has been treated with the standard of care for Crohn's disease and was examined frequently in the medical unit.  At no time, was Plaintiff denied adequate medical care during his incarceration in Kilby Correctional Facility. At no time was the Plaintiff's necessary medical treatment delayed or denied.

I have had no contact with the Plaintiff or had any involvement in the Plaintiffs medical care since his transfer out of Kilby Correctional Facility. I have no involvment or authority over the temperature ventilation or dust levels in the housing units at Kilby Correctional Facility.

Medical records establish that Plaintiff suffered no unconstitutional treatment while confined in Kilby Correctional Facility. It is my opinion, based upon my education; training and experience, as well as my personal knowledge of the Plaintiff, that at all times Plaintiff received medical care within the standard of care of physicians practicing medicine in the State of Alabama.

(Doc. 23-1 at pp. 1-7).  The medical records compiled contemporaneously with the treatment

provided to Rodgers support the affidavit submitted by Dr. Rhaming.

### III.  DISCUSSION[4]

**A.    Deliberate Indifference Generally**

The law is well-settled that establishment of both objective and subjective elements are

necessary to demonstrate a violation of the protections afforded by the Eighth Amendment.

*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).  With respect to the

requisite objective elements of a deliberate indifference claim, an inmate must first show "an

---

[4] The court limits its review to the allegations set forth in the complaint. (Doc. 1).  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official [was] aware of this substantial risk, the official must [have] react[ed] to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty. Ala.,* 268 F.3d 1014 at 1028–29 (11th Cir. 2001) *abrogated on other grounds by Bell Atl. Corp v. Twombly,* 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan,* 511 U.S. 825, 837–38 (1994); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983."  *Id.*

**B.    Deliberate Indifference to Medical Needs.**

Rodgers alleges that the Medical Defendants have acted with deliberate indifference to his conditions related to his Crohn's disease. The Defendants deny these claims.  Specifically, Dr. Wilcotte Rhaming, a medical doctor who is employed by Wexford Health Sources, Inc., and specializes in Gastroenterology and Internal Medicine asserts that medical personnel at Kilby have provided treatment to Rodgers in accordance with their professional judgment.  He further asserts that the first time he examined Rodgers, he was under weight and had been previously diagnosed with Crohn's disease and had an ostomy bag in place.  Throughout Dr. Rhaming's treatment of Plaintiff, Rodgers repeatedly requested surgery to reverse the ostomy bag placement.  Dr. Rhaming continually explained to Rodgers that his disease must be first controlled and managed with medications prior to having surgery.  A good portion of the time Dr. Rhaming treated Plaintiff at Kilby he was non-compliant and a number of times failed to show for scheduled appointments. (Docs. 19-8 and 23-1).

Ultimately in November 2018, Dr. Rahming sent Plaintiff to UAB to be reevaluated by a surgeon.  The surgeon did not recommend surgery; rather he recommended that Plaintiff's non-surgical treatments be intensified.  In February 2019, Plaintiff was hospitalized at Jackson Hospital in Montgomery because he was malnourished as a result of refusing to follow instructions for managing his Crohn's disease. Upon release from the hospital in March 2019, he was assigned a bed in the healthcare unit at Kilby.  He was discharged from the healthcare unit in July 2019 because he was medically stable. *Id.*

In response to Plaintiff's continued demands for surgery, in June 2019, Dr. Rahming referred Rodgers to a doctor at UAB for examination to determine whether he could tolerate inflammatory bowel surgery.  In August 2019, the Plaintiff had surgery to reverse the ostomy that had been performed on Plaintiff before he became Dr. Rahming's patient. In Dr. Rahming's opinion, based upon his education, training, experience, and personal knowledge of the Plaintiff, Rodgers at all times received medical care within the standard of care of physicians practicing medicine in the State of Alabama.  *Id.*

To prevail on a claim of denial of medical treatment, an inmate must show the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000). Medical treatment of prisoners violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotation marks and citation omitted). A prison official is not "deliberately indifferent" unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (finding, under *Estelle*, a plaintiff must establish "not merely the knowledge of a condition,

but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment") (citation and internal quotations omitted). "A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016). Within the Eleventh Circuit, medical malpractice and negligence do not constitute deliberate indifference:

> Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

Thus, to demonstrate deliberate indifference to a serious medical need, Rodgers must show (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and his injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–1307 (11th Cir. 2009). To make this showing, Rodgers must establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (finding that for liability to attach defendant must know and disregard excessive risk to prisoner's health or safety).

Regarding the objective component, a plaintiff must first show an objectively serious medical need, followed by a response by defendants inadequate enough to constitute an unnecessary and wanton infliction of pain, not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *Taylor*, 221 F.3d at 1258 (citations omitted). For the required subjective intent, a plaintiff must show the public official acted with an attitude of "deliberate indifference," which requires two things: an awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and drawing of the inference. *Taylor*, 221 F.3d at 1258 (internal citations and quotations omitted).

Thus, deliberate indifference occurs only when a defendant knows of and disregards an excessive risk to inmate health or safety; is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and draws that inference. *Farmer*, 511 U.S. at 837. An "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Further, neither a difference of opinion on appropriate treatment nor the fact that the treatment was ineffective gives rise to a deliberate indifference claim. *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding mere fact that inmate desires different mode of diagnosis does not amount to deliberate indifference); *Adams*, 61 F.3d at 1545 (stating that whether additional diagnostic techniques or forms of treatment should have been used "is a classic example of a matter for medical judgment" and not a basis for Eighth Amendment liability) (citation omitted).  Indeed, when medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent."  *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

Finally, in determining whether a delay in medical treatment constitutes deliberate indifference, courts consider the seriousness of the medical need, whether delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted). Finally, the subjective knowledge of risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

### 1. Defendant Dr. Wilcotte Rahming

Rodgers asserts that Dr. Wilcotte Rahming denied him adequate medical treatment. Dr. Rahming adamantly denies he or any other medical professional associated with Wexford Health Sources, Inc. acted with deliberate indifference to Rodgers' medical needs during the time relevant to this complaint or at any other time. Instead, Dr. Wilcotte Rahming submitted two affidavits in response to the complaint filed by Rodgers which summarized the medical record and reported that the Plaintiff received continued treatment for his Crohn's disease at Kilby prior to and after his surgery, which was ultimately performed by a free-world surgeon, following repeated evaluations and treatment by outside specialists. (Docs. 19-8 and 23-1). The Court's independent review of the medical records confirms the testimony of Dr. Rahming and the treatment

provided to Plaintiff for his Crohn's disease and other medical conditions. (Doc. 19-1 through 19-7).

Under the circumstances of this case, the court concludes that the course of evaluation and treatment undertaken by Dr. Rahming did not violate Rodgers' constitutional rights. Specifically, there is no evidence upon which the Court could conclude that any member of the medical staff acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Rather, the evidence before the Court demonstrates that Plaintiff has received consistent medical treatment for his Crohn's disease and other conditions. Whether medical personnel "should have [utilized] additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal citation omitted). In addition, to the extent Rodgers complains that his physicians should have pursued some other mode of treatment, including surgery, this allegation does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Hamm*, 774 F.2d at 1505 (holding that inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (holding that simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

As a result, the Court concludes that the alleged lack of medical treatment did not constitute deliberate indifference. In addition, Rodgers has failed to present any evidence showing that the manner in which Dr. Rahming addressed his condition created a substantial risk to his health that the attending health care personnel consciously disregarded. Indeed, to the extent that Rodgers

alleges that he was delayed surgery to reverse his ostomy bag, the court likewise concludes this claim fails because Plaintiff has not "place[d] verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber,* 206 F. App'x at 933.  Rather, the undisputed evidence demonstrates that Plaintiff had surgery when his condition was stable enough to allow it. Prior to that, his Crohn's disease was monitored and treated by Dr. Rahming, other Wexford Health Sources, Inc providers, and outside specialists.  The record is therefore devoid of evidence—significantly probative or otherwise—showing that any medical professional acted with deliberate indifference to a serious medical need experienced by Rodgers.  Consequently, summary judgment is due to be granted in favor of Dr. Rahming.

### 2.  Wexford Health Sources, Inc.

It is well settled that a corporation may not be held liable under 42 U.S.C. § 1983 on the basis of respondeat superior.  *See Buckner v. Toro,* 116 F. 3d 450 (11th Cir. 1986); *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658 (1978).  Instead, a plaintiff must prove that the purported delay or denial of his medical treatment is the product of an official corporate policy, practice or custom that denied him his constitutional rights.  *See Berdin v. Duggan,* 701 F. 2d 909, 914 (11th Cir. 1983).  "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice."  *See Wayne v. Jarvis,* 197 F. 3d 1098, 1105 (11th Cir. 1999), overruled on other grounds *Manders v. Lee,* 338 F. 3d 1304 (11th Cir 2005).  The Plaintiff has failed to offer any evidence that a policy or custom of Wexford contributed in any way to the deliberate indifference alleged in his complaint.  Furthermore, the court has previously concluded that the Plaintiff's deliberate indifference claims failed as a matter of law.  Accordingly, summary judgment is due to be granted in favor of Defendant Wexford Health Sources, Inc.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.       The Defendants' motions for summary judgment (Docs. 19 and 23) be GRANTED.

2.       Judgment be GRANTED in favor of the Defendants.

3.       This case be DISMISSED with prejudice.

4.       Costs be taxed against the Plaintiff.

On or before **May 31, 2022,** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 17th day of May, 2022.

 /s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE